NOT FOR PUBLICATION OR CITATION

Eastern District of Kentucky
FILED
JUN - 7 2006
At Ashland
LESLIE G. WHITMER
Clerk, U.S. District Court

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 06-CV-52-HRW

CHARLES EISNNICHER     PETITIONER

VS:     **MEMORANDUM OPINION AND ORDER**

FEDERAL BUREAU OF PRISONS, ET AL.     RESPONDENT

Charles Eisnnicher, an individual presently confined at the Federal Prison Camp, in Ashland, Kentucky, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241.

This matter is before the Court for screening. 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

## CLAIM

The petitioner alleges that, under 18 U.S.C. §3624(c), he should be entitled to placement in a Community Confinement Center ("CCC")[1] or home confinement for the last 6 months of his sentence.

## FACTUAL ALLEGATIONS

Petitioner has filed a self-styled petition. The following is a summary or construction of

---

[1] Also called "halfway houses."

the allegations contained therein.

The petitioner begins with the history of his incarceration. He alleges that he "made a terrible mistake" on April 13, 2003, when he committed the federal offenses for which he is now serving a sentence. Afterwards, he was not held in custody, however, remaining free for more than a year and appearing for all court proceedings. Even after his sentencing on May 26, 2004, he remained in the community, the Court permitting him to self-surrender at the Federal Prison Camp in Ashland on June 25, 2004. During his time there, he has kept a good record and proved himself as good as his word again about staying where he is supposed to be, being a camp driver who is permitted to travel in the community near the camp. He claims to be scheduled for release on June 19, 2007.

The petitioner seeks to spend the last 6 months of his sentence in a CCC or confined at home rather than serving that time at the camp because of this good record; because 18 U.S.C. §3624(c) and Program Statement 7310.04 permit the Bureau of Prisons ("BOP") to use discretion in setting such placements for people like him; and because the BOP has granted such placements to appropriate prisoners previously. However, he explains, on December 22, 2002, the BOP adopted a new interpretation of the statute differently. Under the new interpretation, he will not get to spend the last 6 months at home or at a CCC.

Petitioner Eisnnicher argues that the new interpretation is contrary to 18 U.S.C. §3621(b); does not recognize the BOP's discretionary power to make such decisions; and is contrary to the BOP's responsibility for making individualized decisions. Additionally, he claims that other courts have so ruled and he cites several cases from other circuits. If the BOP would do its duty

2

to each prisoner, rather than denying the 6-month placements for those imprisoned after the 2002 change, he would be entitled to either of these desired placements because of his history and his mitigating circumstances, which he describes in detail, including having a large and disabled family who needs him.

The petitioner seeks to have this Court hold the changed interpretation invalid and compel the BOP to give him placement in either a CCC or home confinement for the last 6 months of his sentence, under the pre-2002 policy. He also asks that the Court not require exhaustion of the BOP administrative remedy process for the following reason:

> ... [E]xhaustion would be futile, given that the Petitioner is not challenging the application of the BOP regulations, but their validity. See, Woodall v. The Federal Bureau of Prisons, No. 05-CV-05142.

Record No. 1 at 4.

## DISCUSSION

An examination of the BOP's change in policy about CCC's is contained in *Colton v. Ashcroft*, 299 F.Supp.2d 681 (E.D. Ky. 2004), from this Court, and in *Dismas Charities, Inc. v. United States Department of Justice*, 401 F.3d 666 (6th Cir. 2005), from the appellate court in this circuit. For a recent, helpful discussion, see *Schellberg v. Lindsay*, 2006 WL 1149251 (M.D. Pa. April 28, 2006) (slip op.).

For today's purposes, another detailed examination is not called for. It is sufficient to state that the BOP's 2002 change in interpretation of 18 U.S.C. §3624(c) reduced the amount of time which a federal prisoner may serve in a CCC, from a previous routine grant of the last 6 months of the sentence, to the *lesser* of ten percent of the prisoner's sentence or 6 months. When

3

several courts found the 2002 policy unlawful because it failed to recognize the BOP's discretion to transfer a prisoner to a CCC at any time and was therefore contrary to §3621, the BOP promulgated new regulations, 28 C.F.R. §§570.20 and 570.21, which became effective on February 14, 2005. For some prisoners today, under the new regulation, the CCC stay may be up to six months, but for others, it may be just one month.

The petitioner's problem herein is that he did not pursue the matter administratively so as to know just what his transitional placement would be, *e.g.*, a CCC or home confinement or how long or if/how the statutory factors are applied to him. Only after the decision is made can he challenge it. Therefore, to the extent that the instant petitioner seeks a specific length placement in specific places, he has not fulfilled a pre-condition to a federal lawsuit, *i.e.*, the exhaustion of the BOP administrative remedy process. In essence, the petitioner is asking this Court to interfere in the BOP's bailiwick and order things which the prisoner has never requested of the BOP. This is impermissible.

Federal courts have long required exhaustion of these administrative remedies prior to the filing of a habeas corpus petition under 28 U.S.C. §2241. *See Gonzalez v. United States*, 959 F.2d 211, 212 (11th Cir. 1992) (per curiam); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991); *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir. 1981) (per curiam); *Hardwick v. Ault*, 517 F.2d 295, 296 (5th Cir. 1975) ("[T]he federal courts have imposed upon federal prisoners the requirement that they 'exhaust their administrative remedies in accordance with Bureau of Prisons policy . . . .'").

The administrative remedies available to inmates confined in Bureau of Prisons institutions are set out at 28 C.F.R. §§542.10-.19 (1998). Section 542.13(a) demands that an inmate "shall" first informally present his request or complaint to a staff member (there is a form, a BP-8), thereby providing them with an opportunity to grant a request or correct a problem, before filing a request for an administrative remedy. If the inmate is not satisfied, he may file a formal written request (on a BP-9 form) to the Warden. If the inmate is still not satisfied with the Warden's response, he may appeal to the Regional Director (a BP-10), and, if not satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of General Counsel (a BP-11). *See* §542.15.

The BOP's administrative process includes established response times, which are not unduly burdensome. "The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred." §542.14. Once the BP-9 containing a request is filed, the Warden has 20 days to respond; the Regional Director, 30 days; and General Counsel, 40 days. §542.18.

The instant petitioner has more than a year to serve, ample time for administratively pursuing the matter of where his final days will be spent, rather than just anticipating the worst. Yes, other petitioners, such as Colton, were not required to exhaust the BOP scheme, but his situation is distinguishable. Petitioner Colton was on the edge of release to the CCC on a certain date, under the old policy of providing prisoners CCC placement for their final six months, when the placement date was jerked away and a later one set, based on the change in policy.

5

Additionally, he had completed all but the last step in the administrative appeal process and further pursuit was deemed futile for several reasons, one being the 11th-hour nature of the BOP's changing his date, virtually on the eve of his anticipated release, so that further administrative proceedings would subject him to irreparable injury.

According to his own allegations, the instant petitioner has never had a decision on a CCC placement, home confinement, or a date certain for either, and he is more than a year from the end of his sentence. There is nothing futile about his pursuing these matters administratively, nor is the time to do so an issue. Further, the time involved may work to his advantage. The law in the Sixth Circuit may change by the time he is finished administratively.

It was only a few months ago that another circuit court held that the BOP's adherence to the categorical 10% approach to CCC decisions is unlawful. The petitioner's reference to a *Woodall* case is construed to be a reference to *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3rd Cir. December 15, 2005), wherein the Third Circuit so held. The remedy therein was to remand for the BOP's individualized consideration of the petitioner's placement in CCC, using the factors in 18 U.S.C. §3621(b). The case is not controlling in this circuit. However, upon the instant petitioner's request, the BOP may or may not consider the statutory factors and/or the law in this circuit may change. At any rate, the petitioner will then have a full record to present to this Court.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)   Petitioner Eisnnicher's petition for writ of habeas corpus is **DENIED**.

(2)   The action herein will be **DISMISSED** from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondents.

This June 6, 2006.

Signed By:
**Henry R Wilhoit Jr.**
**United States District Judge**